**In re ANDACO, INC., Debtor.**

**William Stephen REISZ, Trustee for the Estate of Andaco, Inc., Plaintiff.**

v.

**NEWCOMB OIL CO., Defendant.**

Bankruptcy No. 97–30170(3)7.
Adversary No. 97–3236.

United States Bankruptcy Court,
W.D. Kentucky,
Louisville Division.

Sept. 8, 1998.

Louis M. Nicoulin, Louisville, KY, for Debtor.

William Stephen Reisz, Louisville, KY, trustee.

Joseph S. Elder, II, Louisville, KY, for trustee.

## MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This adversary proceeding was filed by the Chapter 7 Trustee, William Stephen Reisz ("Trustee"), for the purpose of recovering an allegedly preferential transfer from Defendant, Newcomb Oil Co. ("Newcomb"). The Debtor, Andaco, Inc. ("Andaco"), which operated a convenience-type store, sold motor fuel to retail customers. The motor fuel was supplied on a consignment basis by Newcomb, with Newcomb retaining title at all times until each respective sale to the customer. The month before Andaco filed for bankruptcy, Newcomb removed its motor fuel from its tanks located at the Andaco store, asserting that Andaco had breached its contract with Newcomb. Trustee asserts by his Complaint that this removal constituted a preferential transfer, which should be set aside.

This matter is presently before the Court on Newcomb's Motion for Summary Judgment. Newcomb argues that it is entitled to judgment as a matter of law because: (1) the transfer did not involve property in which the Debtor, Andaco, possessed an interest; and (2) was not for or on account of an antecedent debt. It is a requirement that the Trustee prove both of these elements to recover a transfer as a preference pursuant to 11 U.S.C. § 547.

The Court, having fully reviewed the briefs filed by both parties, as well as the entire file, including the main file, finds that there are material facts in dispute. Thus, the case is not at the present time ripe for summary judgment, and Newcomb's Motion must, accordingly, be overruled for the reasons set forth below.

## *FACTS*

Andaco operated a convenience-type store in Bullitt County, Kentucky. As is typical of many stores of this nature, Andaco sold motor fuel to retail customers. Andaco obtained the motor fuel it sold from Newcomb, which supplied it on a consignment basis. Pursuant to the Motor Fuel Agreement between Andaco and Newcomb, Newcomb placed motor fuel owned by Newcomb into tanks also owned by Newcomb located at Andaco's store. Newcomb retained ownership of the motor fuel at all times until it was sold to retail customers. There is no dispute that Andaco never owned the motor fuel stored in the tanks located at its store premises. In addition, pursuant to the terms of the Agreement, Newcomb owned, installed and maintained all of the equipment and improvements associated with the motor fuel, including, the tanks, pumps, and canopy.

Since Newcomb was the exclusive supplier of motor fuel to Andaco, it was never co-mingled with motor fuel from other suppliers. It is undisputed that Newcomb held exclusive title to all motor fuel sold at the Andaco store. However, despite Newcomb's exclusive ownership of the motor fuel and related equipment, it did not post a sign or any other notice that would have advised Andaco's customers or creditors of that fact.

Under the terms of the Agreement, Andaco reported to Newcomb each day to account for the amount of fuel sold. Newcomb would then directly draft Andaco's bank account for the corresponding dollar amount minus Andaco's commission. In May of 1996, Newcomb additionally agreed to accept money orders, cash, or certified checks from Andaco on a daily basis for the previous day's sale of motor fuel.

On December 27, 1996, Newcomb removed all of its motor fuel then located in its tanks

at Andaco's store. Trustee's Complaint states that the value of the motor fuel removed was approximately $1900.00. At the time Newcomb removed the motor fuel, Andaco owed Newcomb $948.22 for the motor fuel sold the previous day but at that time yet unpaid. Newcomb states that it removed the motor fuel because Andaco defaulted on the terms of their Agreement. Newcomb has not, however, elaborated on or explained the nature of the default.

The next month, on January 14, 1997, Andaco filed for Chapter 7 bankruptcy. Thereafter, Trustee brought this adversary proceeding on the premise that Newcomb received a preference when it removed its motor fuel. Trustee takes the position that although the motor fuel was sold on a consignment basis, Newcomb did not post a sign or otherwise put the public on notice that it, rather than Andaco, owned the motor fuel. Thus, Trustee alleges, the fuel was an asset of Andaco's bankruptcy estate, and as a result Newcomb received a preference by removing it.

## DISCUSSION OF LAW
### I. SUMMARY JUDGMENT

In considering a motion for summary judgment, the question presented to this Court is whether there is "no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court cannot try issues of fact on a Rule 56 motion, but is authorized to determine whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held that "in filing a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden; i.e., whether a jury could reasonably find either the plaintiff proved his case by the quality or quantity of evidence required by the law or that he did not". *Id.*, 477 U.S. at 254, 106 S.Ct. 2505.

When ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion, in this case the Trustee. *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505. By granting summary judgment, the Court is concluding that based on the evidence upon which the nonmoving party intends to rely at trial, no reasonable fact finder could return a verdict for the nonmoving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985).

The moving party carries the initial burden of proof by informing the Court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Once the moving party has produced such evidence, the nonmoving party must then direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. In other words, the nonmoving party, in this case the Trustee, must come forward with evidence establishing that it has a viable cause of action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

In this case, there are clearly material facts that are in dispute. Thus, this case is not ripe for summary judgment.

The Court begins its analysis with a review of 11 U.S.C. § 547(b), which provides in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent; ·

   (4) made—

      (A) on or within 90 days before the date of the filing of the petition; or

      (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made;

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Pursuant to this section of the Bankruptcy Code, Trustee is empowered to recover property of the debtor transferred to or for the benefit of a creditor within the designated periods prior to bankruptcy. Although the debtor does not possess an ownership interest in goods held for sale on a consignment basis, such goods are considered to be property of the debtor and thus subject to the provisions of § 547(b). *See In re Sullivan,* 103 B.R. 792 (Bankr.N.D.Miss.1989); *In re Kingsport Hardware, Inc.,* 40 B.R. 838 (Bankr.E.D.Tenn.1984); *In re A.J. Nichols, Ltd.,* 21 B.R. 612 (Bankr.N.D.Ga.1982); *In re P.M.R.C. Corp.,* 39 B.R. 912 (Bankr.E.D.N.Y. 1984); *In the Matter of Castle Tire Center,* 56 B.R. 180 (Bankr.W.D.Pa.1986). There are three exceptions to this rule, however. The consigned property does not become designated as property of the debtor's estate, subject to § 547 in any of the three following instances: (1) where the consignor posts a sign giving notice of its ownership interest; (2) it is generally known by the creditors of the entity holding the consigned goods that it is "substantially engaged in selling the goods of others;" or (3) the goods are subject to a properly perfected security interest in compliance with Article 9 of the Uniform Commercial Code. *Sullivan,* 103 B.R. at 792; *Kingsport Hardware,* 40 B.R. at 838; *A.J. Nichols,* 21 B.R. at 612; *P.M.R.C. Corp.,* 39 B.R. 912; *Castle Tire Center,* 56 B.R. at 180.

The case law governing the application of § 547 to consigned goods has its genesis in Section 2-326 of the Uniform Commercial Code, which provides in relevant part:

Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this section are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." *However, the subsection is not applicable if the person making delivery*

(a) complies with an applicable law providing for a consignor's interest or the like to *be evidenced by a sign,* or

(b) *establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others,* or

(c) complies with the filing provisions of the article on secured transactions (Article 9).

KRS 355.2–326(3) (emphasis supplied).

In the case at bar, it is undisputed that the Debtor, Andaco, sold the motor fuel on a consignment basis, possessing no ownership interest at any time in that property. However, Newcomb argues that Trustee cannot establish two of the required elements under § 547 to recover the removed motor fuel as a preference. First, Newcomb argues that the motor fuel falls into one of the recognized exceptions, because it was generally known by Andaco's creditors that the motor fuel sold by Andaco was not owned by Andaco. Therefore, Newcomb argues, Trustee cannot establish a "transfer of an interest of the debtor in property," the initial requirement for a § 547 preference action. Second, Newcomb argues that the transfer was not "for or on account of an antecedent debt owed by the debtor," as is required by § 547(b)(2).

■ The Court finds that there are material facts in dispute with regard to both assertions.

**A. THERE IS A MATERIAL ISSUE OF FACT WITH REGARD TO WHETHER IT WAS GENERALLY KNOWN BY ANDACO'S CREDITORS THAT ANDACO WAS SUBSTANTIALLY ENGAGED IN SELLING GOODS OF OTHERS.**

It is undisputed that Newcomb did not post a sign or otherwise put the public on

notice that it owned the motor fuel sold by Andaco. Newcomb argues, however, that the second exception applies; i.e., that it was generally known by Andaco's creditors that Andaco did not own the motor fuel that it sold. In support of this contention, Newcomb proffers the Affidavit of Richard Maxedon, a purported expert in the petroleum marketing industry. Mr. Maxedon states it is widely known that convenience-type stores do not own the gasoline that they sell.

Having proffered this Affidavit testimony, the burden shifts to Trustee to provide evidence in rebuttal. Trustee has, in response, proffered the Affidavit of Margie Beinlein, the accounts receivable specialist with Heitzman Bakery, another of Andaco's creditors. She states that "she did not know that prior to the bankruptcy being filed that there was any ownership interest in Newcomb Oil Company, or anyone else in the gasoline held in the tank storage by [Andaco]." While the Court finds this evidence somewhat weak as a question has been raised as to whether Ms. Beinlein was even aware prior to the bankruptcy that Andaco sold motor fuel at all, the Court finds Ms. Beinlein's Affidavit at the very least raises a material issue of fact as to what Andaco's creditors generally knew.

### B. THERE IS A MATERIAL ISSUE OF FACT AS TO WHETHER NEWCOMB'S REMOVAL OF ITS MOTOR FUEL WAS ON ACCOUNT OF AN ANTECEDENT DEBT.

Newcomb acknowledges that $948.22 was due on the date it removed its motor fuel from the tanks located at the premises of the Andaco store. However, Newcomb states that the removal was not "for or on account of" that debt. Rather, Newcomb asserts, it was made in response to Andaco's defaults under the Motor Fuel Agreement. Unfortunately, Newcomb does not elaborate upon or explain those defaults. Newcomb does not describe the nature of the default, or give the Court a dollar figure for damages resulting from a default. The Court notes that if the removal occurred on account of a *debt arising* from an earlier default, the § 547 preference requirements would be satisfied, assuming Trustee is able to establish the remaining elements.

The matter becomes further clouded by the fact that Newcomb has not filed a Proof of Claim. If the removal of the motor fuel was unrelated to the $948.22 owed at the time of the removal, it is logical to assume that the debt would still be owing. However, if that were the case, Newcomb would surely have filed a Proof of Claim, which it has not.

The matter is additionally confused by Andaco's Bankruptcy Schedules. Newcomb is listed as an unsecured creditor, but the debt owed is not described. In addition, the dollar amounts listed do not coincide with those provided to the Court in the briefs that have been filed in connection with this Motion for Summary Judgment. Andaco's Schedules state that a payment was made to Newcomb on December 27, 1996, in the amount of $1500.00, leaving a balance owed of $1223.74. It is unclear whether the "$1500.00 transfer" refers to Newcomb's removal of the motor fuel because the Schedules do not describe the transfer. Additionally, that dollar amount does not match up with the dollar amount of $1900.00 that Trustee has assigned to the motor fuel removed, and the Court does not find that Newcomb has refuted that amount anywhere in the file. Nor does the Court find any reference to suggest the $1900.00 figure includes interest. Thus, it is unclear whether the $1500.00 transfer referred to in Andaco's Schedules refers to Newcomb's removal of its motor fuel. If it does, it would appear from the Schedules that at least Andaco perceived the removal of the motor fuel to be a transfer of property in which it had an ownership interest that was made on account of an antecedent debt. In fact, the Schedules expressly indicate that the transfer satisfied all but $1223.74 of a debt owed to Newcomb.

Also creating uncertainty is the $1223.74 figure for the debt owed by Andaco to Newcomb, as listed in the Schedules. That figure does not match the $948.22 figure that has been stated as the debt owed for gas sold the day preceding Newcomb's removal of the motor fuel. If the $1,223.74 figure does refer to the debt owed for motor fuel sold the day preceding the removal, that fact would indi-

cate that at least Andaco believes that particular debt has never been satisfied, but is still due and owing even after the removal.

Accordingly, there are material issues of fact with regard to whether Newcomb's removal of its motor fuel was "for or on account of an antecedent debt."

## CONCLUSION

For the above stated reasons, the Court finds that there are material issues of fact. Thus, this case is not presently ripe for summary judgment and Defendant, Newcomb's, Motion will, by separate order, be **overruled.**