**In re Roy L. BENSON, Debtor.**

**John J. HUNTER, Trustee, Plaintiff,**

**v.**

**POOL PALS MANUFACTURING, INC., et al., Defendants.**

**Bankruptcy No. 82–0634.**
**Related Case 81–01108.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Jan. 24, 1986.

John J. Hunter, Toledo, Ohio, pro se.

Lorin J. Zaner, Toledo, Ohio, for Defendants Pool Pals Mfg., and Albert Verplaste.

J.D. Guernsey, Fostoria, Ohio, for Dorothy Verplaste.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge. .

This cause comes before the Court upon the Motion For Summary Judgment filed by the Defendant, Dorothy Verplatse, and the Motion For Summary Judgment filed by the Defendants, Albert A. Verplatse and Pool-Pals Manufacturing, Inc. (hereinafter Pool-Pals). The parties have filed their written arguments respecting the merits of these Motions and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that the Motion For Summary Judgment filed by Albert Verplatse and Pool-Pals should be DENIED. It also finds that the Motion For Summary Judgment filed by Dorothy Verplatse should be GRANTED.

## FACTS

The Plaintiff in this case is the Trustee appointed by the Court subsequent to the issuance of an Order For Relief on the Debtor's involuntary Chapter 7 Petition. The Debtor in the underlying Bankruptcy proceeding was, at the time the Petition was filed, an attorney licensed to practice law in the State of Ohio. The Defendant, Albert A. Verplatse, is the President of Pool-Pals, a corporation previously engaged in the business of selling swimming pools and related supplies. Dorothy Verplatse was the wife of Albert Verplatse and was the secretary of the Defendant corporation. In her capacity as secretary she was authorized to make withdrawals from the corporation's account and to issue checks in the corporate name. She was also the sole person responsible for maintaining the books and records of the business.

Several years prior to the filing of the Involuntary Petition against the Debtor, the Defendants hired the Debtor to perform certain legal work on behalf of themselves and the business. Included in these matters were the recovery of money from a discontinued business transaction and the resolution of a dispute with the Internal Revenue Service. It appears as though the Defendants remained clients of the Debtor until some time prior to the filing of the

involuntary petition. Although it also appears that there may have been a social relationship between the parties, the extent of that relationship is unclear.

During the course of the relationship between the Defendants and the Debtor, Dorothy Verplatse made a number of withdrawals from the corporation's bank accounts which have come into question as a result of this case. It appears that the proceeds from these withdrawals were turned over to the Debtor. The circumstances and purposes of these transfers are unclear. It is also unclear whether or not Albert Verplatse knew of these transfers at the time they were made. This uncertainty arises from Albert Verplatse's deposition testimony, wherein he indicates that he inadvertently discovered these transfers at some time prior to the filing of the petition against the Debtor. He also makes unspecific allegations as to the existence of some romantic involvement between his wife and the Debtor.

Prior to his discovery of the transfers, Albert Verplatse was asked by the Debtor for a personal loan in the amount of approximately Ten Thousand Seven Hundred Fifty and no/100 Dollars ($10,750.00). As reflected by the deposition testimony, the Debtor explained that he needed the loan to complete a business transaction. The nature of the transaction was not explained to the Defendant. Albert Verplatse loaned the Debtor the amount requested in cash. The Debtor gave Verplatse a receipt which reflected that the funds used for the loan were received from Albert Verplatse. However, there appears to be some question as to whether the funds were issued from assets of Verplatse or from those of the corporation. The deposition testimony indicates that the loan was repaid at some time prior to the filing of the Petition. However, it is unclear how much was repaid, when it was repaid, and the circumstances which surrounded the repayment.

During the period between November 13, 1980, and February 17, 1981, the Debtor issued a number of checks to Albert Verplatse, Pool-Pals, and the Internal Revenue

Service on behalf of Pool-Pals. The record does not make clear the purposes of each of these transfers. It is also unclear whether or not the checks which were offered as exhibits represent all of the transfers which are to be addressed in this case. However, it appears as though the checks issued to the Internal Revenue Service were payments to that agency in settlement of its dispute with Pool-Pals.

The Involuntary Petition was filed on June 6, 1981, and an Order for Relief was issued July 14, 1981. In an effort to collect assets for the estate the Trustee has initiated this adversary action. In this case, the Trustee seeks to avoid the transfers made by the Debtor to Albert Verplatse and Pool-Pals under the authority of 11 U.S.C. Section 547. Specifically, he alleges that the transfers made by the Debtor were preferential as a result of an insider relationship that the Defendants had with the Debtor. He also alleges that Dorothy and Albert Verplatse, as sole shareholders of the corporation, actually received the transfers and did not utilize these funds for the benefit of the corporation. He further alleges that this unauthorized use subjects the individual Defendants to the provisions of 11 U.S.C. Section 547. It should be noted that the record does not reflect that any transfers were made directly to Dorothy Verplatse by the Debtor.

In their Motions For Summary Judgment the Defendants indicate that because the transfers in question were made more than ninety (90) days prior to the filing of the Involuntary Petition, the Trustee must proceed on the basis that the transferees were insiders of the Debtor. They argue that because they do not qualify as insiders, as the term is defined by the Bankruptcy Code, they are not subject to the avoidance provisions of 11 U.S.C. Section 547. In support of this argument, Dorothy Verplatse has offered her Affidavit, wherein she avers to the fact that she did not receive any transfers from the Debtor, and that she has never been a relative or general partner of the Debtor. She also indicates that since November of 1980, she has had

no involvement with the business affairs of either her husband or Pool-Pals. The deposition testimony and affidavit of Albert Verplatse reflects that both he and Pool-Pals were never a relative or general partner of the Debtor. It should be noted that it appears that Dorothy and Albert Verplatse were divorced subsequent to the filing of the Debtor's Petition.

In addition to the argument stated above, Albert Verplatse and Pool-Pals have asserted a variety of other arguments in support of their Motion For Summary Judgment. Specifically, it is argued that the transfers made by Dorothy Verplatse were actions outside her authority as secretary of the corporation, and that the transfers constituted a theft of corporate property. The Defendants further argue that the receipt of stolen property does not vest the Debtor with sufficient rights in the property so as to render a return of that property subject to the provisions of 11 U.S.C. Section 547. Similarly, it is argued that even if the Debtor was in lawful possession of corporate property, his rights to possession were limited to a specific purpose, thereby rendering inapplicable the provisions of 11 U.S.C. Section 547. These Defendants further contend that even if they are considered to be insiders of the Debtor, that they did not have reasonable cause to believe that he was insolvent. In support of these arguments the Defendants cite the deposition testimony, wherein it is indicated that at the time of the transfers the Defendants did not have a close relationship with the Debtor and that they had no knowledge of his financial difficulties.

The Trustee opposes the Motions for Summary Judgment on the basis that the term "insider" is not confined to those entities specifically enumerated in the Bankruptcy Code. He also opposes the Motion of Albert Verplatse and Pool-Pals on the grounds that prior testimony of the Debtor indicates that the Defendants were apprised of his insolvency at the time the transfers were made. He further argues that because Dorothy Verplatse was authorized to conduct financial transactions on behalf of the corporation, the circumstances surrounding her transfers to the Debtor are immaterial to the creation of a debtor-creditor relationship.

## LAW

### I

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, the provisions of 11 U.S.C. Section 547 stated in pertinent part:

(b) ... the trustee may avoid any transfer of property of the debtor

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

This pre-amendment version of that section is applicable to this adversary proceeding, inasmuch as the Chapter 7 Petition was filed prior to the effective date of these amendments. *See,* P.L. 98–353 Section 553(a).

Under these provisions a trustee may avoid the transfer of an interest of the debtor in property 1) which was made to a creditor, 2) on account of an antecedent debt, 3) within one (1) year prior to the filing of petition, 4) the creditor was an insider, 5) the creditor had reasonable cause to believe that the debtor was insol-

vent at the time the transfer was made, 6) the debtor was insolvent at the time the transfer was made, and 7) the transfer enabled the creditor to receive more than would have been received in a Chapter 7 liquidation had the transfer not been made. *See, Allison v. First National Bank & Trust Co. (In re Damon)*, 34 B.R. 626 (Bkcy.D.Kan.1983), *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427 (Bkcy.S. D.N.Y.1982). In order for the transfer to be recoverable the insider must have had more than a suspicion as to the debtor's insolvency. *Foley v. Briden (In re Arrowhead Gardens, Inc.)*, 32 B.R. 296 (Bkcy.D. Mass.1983). The transferee must have been aware of facts that would lead a prudent businessman to conclude that the debtor was insolvent. *Bernstein v. Alpha Associates, Inc. (In re Frigitemp Corp.)*, 34 B.R. 1000 (S.D.N.Y.1983).

The provisions of 11 U.S.C. Section 101(25) state in pertinent part:

(25) "insider" includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control;

It should be noted that this section does not purport to set forth, to the exclusion of all others, those entities which may be insiders of a debtor. *See*, 11 U.S.C. Section 102(3). An insider may be any entity whose close relationship with the debtor subjects transactions made between the two parties to careful scrutiny. *Jackson Purchase Production Credit Ass'n. v. Taylor (In re Taylor)*, 29 B.R. 5 (Bkcy.W.D.Ky.1983).

## II

In the present case, it is readily apparent that the Defendants are not related to the Debtor in any manner set forth in Section 101(25). However, this fact alone does not preclude them from being found to be insiders. It is only required that the Defendants have had a sufficiently close relationship with the debtor so as to place any transactions between them into question. In order to determine whether or not the relationship between these parties should be made subject to close review, the Court must examine the evidence as it pertains to their association.

■ At the present time, there has been some testimony which suggests that there was both a business and social relationship between the Debtor and the Defendants. However, that testimony is insufficient for this Court to make a dispositive finding on the question of insider standing. Furthermore, the Court is not required at this time to make a finding as to whether or not the Defendants were insiders. The only issue as to insider standing which must be decided is whether or not an insider is limited to those entities set forth in 11 U.S.C. Section 101(25). As previously indicated, the Bankruptcy Code contemplates no such limitation. Therefore, it must be concluded that the Defendants' arguments on this point are without merit.

## III

■ The Defendants, Albert Verplatse and Pool-Pals, have raised other arguments regarding whether or not the Debtor had sufficient rights in the property so as to subject any return of that property to the provisions of 11 U.S.C. Section 547. Ostensibly, these Defendants question whether or not a debtor-creditor relationship evolved as the result of the transfers to the Debtor. In this regard, it has been stated that where a debtor has misappropriated or converted property belonging to another, the question as to the existence of a debtor-creditor relationship is dependent upon the election of the owner of the property. If the owner elects to treat the loss as a debt, then the owner becomes a creditor, thereby making any return of the property subject to the provisions of 11 U.S.C. Section 547. On the other hand, if the owner elects to stand on his rights as owner of the property or to rescind the transaction in which a breach of trust was committed, then a transfer of the property would not be pref-

erential under Section 547. In order to exercise his rights as owner or settler, the person must be able to trace or identify the property in the hands of the debtor. *See,* 4 *Collier on Bankruptcy* 15th Ed. Section 547.19. This exception to the preference provision is based upon the principle that a preference may only be found to exist when the debtor had an interest in the property transferred. If the debtor had no such rights, then the estate would not have inherited the property and would not be diminished by a pre-petition transfer. *See, Ellis v. State Bank of Towner, North Dakota (In re Archie Campbell, Inc.),* 45 B.R. 416 (Bkcy.D.N.D.1984), *Huddleston v. Chesnut (In re Rector),* 14 B.R. 1008 (Bkcy.E.D.Tenn.1981).

However, it should be pointed out that regardless of how the debtor came into possession of property of another, there exists a debtor-creditor relationship between the parties. It is the fact that the debtor has possession of property of another which creates the obligation. There is some support for the view that even a return to the creditor of property which the debtor did not have a title interest in constitutes a voidable preference. *P.M.R.C. Corp. v. Crescent Jewelry & Rare Coin Co., Inc. (In re P.M.R.C. Corp.),* 39 B.R. 912 (Bkcy.E.D.N.Y.1984), *Lancaster v. Hoye (In re Kingsport Hardware, Inc.),* 40 B.R. 838 (Bkcy.E.D.Tenn.1984). There is also support for the view that property which was illegally acquired by the debtor is subject to the preference provision if it was returned within the preference period. *Merrill v. Abbott (In re Independent Clearing House Co.),* 41 B.R. 985 (Bkcy.D. Utah 1984). This support is founded on the theory that a transfer of anything of value over which the debtor had immediate control constitutes a transfer of property for purposes of 11 U.S.C. Section 547. *See, Merrill v. Abbott,* supra.

■ In the present case, the deposition testimony and the Affidavit of Albert Verplatse establishes some basis for the assertion that Dorothy Verplatse may have unlawfully diverted funds from the Pool-Pals accounts. If this evidence could be supported by a further showing that this diversion occurred, then the Court would have to consider what applicability those facts would have on the Trustee's right to avoid the transfers. However, at the present time there is insufficient evidence to determine whether or not there was an unlawful diversion of corporate funds, or whether the Debtor's possession of the funds was limited in scope. The only evidence which supports the Defendants' position is that offered by the Defendants themselves. There has been no independent showing with regard to the nature, time, and circumstances of the transfers made by Dorothy Verplatse. In the absence of such evidence there remains a question of material fact which must be resolved prior to the determination of applicable law. Therefore, it must be concluded that Albert Verplatse and Pool-Pals are not entitled to summary judgment on this issue.

■ These Defendants have also raised the issues of whether or not the Debtor was insolvent at the time the transfers were made, and whether or not they had knowledge of that insolvency. As to the former issue, the Defendants have not offered any evidence to show that the Debtor was not solvent at the time of the transfers. However, a review of the Debtor's schedules and financial affairs suggests that the Debtor was in considerable financial straits during the period in question. Without a satisfactory showing to the contrary, this Court cannot find, for purposes of summary disposition, merit in the arguments made by the Defendants.

As to whether or not the Defendants had knowledge of the Debtor's insolvency, any resolution of this question must be based upon a showing of sufficient, competent evidence. At the present time the Affidavit and deposition testimony of Albert Verplatse indicates that he had no knowledge of the Debtor's insolvency. However, the Trustee has offered, in the text of his argument, testimony of the Debtor which reflects that the Defendants were aware of his financial distress. Although Verplatse's

Affidavit indicates that he and the Debtor were not "good friends", the deposition testimony indicates that there was some social involvement between them. Furthermore, it is apparent that the parties maintained an attorney-client relationship for several years, and that the affairs handled during the course of that relationship were commercial in nature. There is also the fact that the Debtor was able to obtain a Ten Thousand Seven Hundred Fifty and no/100 Dollars ($10,750.00) cash loan from the Defendant without the benefit of a financial statement or security agreement. In light of the apparent contradictions in the testimony and evidence, there is a question of material fact as to whether the Defendants had knowledge of the Debtor's insolvency. Since the question of knowledge is fundamental to this case, it must be concluded that summary judgment on this issue is not proper.

## IV

Although the Court has found the arguments offered in conjunction with the Motions For Summary Judgment to be without merit, the parties have placed before this Court the question of whether summary adjudication is available to any party at this juncture in the case. Despite the fact that the arguments set forth by the Movants do not, in and of themselves, support the Motion, the Court must still review the case to determine if summary disposition is proper. Such review is proper in light of the fact that the purpose of a motion for summary judgment is to establish whether or not there is sufficient evidence to create a question of material fact as to a defendant's liability in a cause of action. *E.P. Hinkel & Co. Inc. v. Manhattan Co.*, 506 F.2d 201 (D.C.Cir.1974).

A review of the record in the present case reflects that there has been no showing of any transfer by the Debtor to Dorothy Verplatse. The exhibits and the testimony all reflect that any transfers which are subject to avoidance were made to Albert Verplatse, Pool-Pals or the Internal Revenue Service on behalf of Pool Pals.

In this regard the Trustee has admitted in discovery that he does not claim that Dorothy Verplatse directly received any transfers from the Debtor. Although the Complaint implicates her in a misapplication of the funds transferred to the corporation by the Debtor, there has been no evidence presented which substantiates that claim. While it may also be true that Dorothy Verplatse was both an officer and a shareholder of the corporation, the Trustee has not offered evidence of her ownership interest, nor has he shown that she received a distribution from the corporation as a result of the transfers. The only evidence against Dorothy Verplatse is the deposition testimony which suggests that she may have diverted corporate funds to the Debtor. Such evidence is insufficient to create a question of material fact as to even the most basic element of an action to recover a preferential transfer. Incumbent in an action to recover a preferential transfer is the requirement that there have been a transfer of property from the debtor to the person from whom recovery is sought. As has been explained, there has been no showing that Dorothy Verplatse received a transfer. In the absence of such evidence, it must be concluded that she is entitled to be dismissed from this action.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Motion For Summary Judgment filed by Albert A. Verplatse and Pool-Pals Manufacturing, Inc. be, and is hereby, DENIED.

It is FURTHER ORDERED that the Motion For Summary Judgment filed by Dorothy Verplatse be, and is hereby, GRANTED.

It is FURTHER ORDERED that Dorothy Verplatse be, and is hereby, DISMISSED from this action.

It is FURTHER ORDERED that a Pre-Trial conference in this case be, and is hereby, set for Thursday, February 20,

1986, at 3:00 o'clock P.M., in Courtroom No. 2, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.